CARMICHAEL ET AL. *v.* PARKS ET AL.

[77 South. 660, Division B.]

ESTOPPEL. *Deeds. Rights of parties. Fraudulent representations.*
  Where parties in ignorance of the real facts are induced by misrepresentations to execute a deed to their lands, they are not thereby estopped from asserting their rights to the lands or from recovering the value thereof except as to *bona-fide* purchaser, for value without notice.

APPEAL from the chancery court of Neshoba county. HON. W. J. MUNN, Special Chancellor.

Suit between Mrs. Mary Carmichael and another and J. B. Parks and another. From a decree for the latter, the former appeals.

On suggestion of error, for former opinion see 76 So. 578.

The facts are fully stated in the opinion of the court.

*B. B. Carmichael,* for appellants.

"The burden is on the purchaser to show that the sale was made in good faith," citing *Jeffries* v. *Dowdle,* 61 Miss. 508.

Appellees cite a number of supposed authorities. Of course it is very easy for one to say "supposed authorities," but, decisions are only an authority when dealing with facts similar to those under consideration by the court. Taking this standard as a test, there is no authority which has applied the doctrine of estoppel to a state of facts the same as those presented by this record. Summarizing the cases cited by appellees relative to the proposition of estoppel, we find the cases of *Hafter* v. *Strange,* and that of *Bass* v. *Nelms,* a fair sample of the authorities insisted to be in point. In the *Hafter* v. *Strange* case the vendor was estopped for the simple reason, that a prospective purchaser came upon her premises and stated that her vendee had on record a title to more property than she intended to convey and that he was about to sell the property. What a wholly different state of facts from the instant case! Is there any evidence in this case to show that some one had appeared on the scene and informed these heirs, most of whom lived from one hundred and seventy-five to two hundred miles from any source of information, that Mrs. Parks and J. B. Parks had included in that deed forty acres of land that was not bought in by them under the deed of trust. Further in the Hafter case, upon examining the title on the record, a prospective purchaser found the same perfect. In the instant case what did the appellees find upon investigating the record of Neshoba county; this is what Williamson and Gipson say they relied upon; they, as a matter of fact shown undisputed in this record, found an attempt to substitute a trustee in the Rosenbaum trust deed; they found no evidence of title sufficient to withstand a suit in ejectment because this attempted substitution and the record bore no evidence that the same was there when the sale was made and that it was the act of the clerk in putting it there; neither was this instrument acknowledged to

entitle it to be placed there. Then of course he came to the trustee deed, executed by Rodgers to J. B. Parks. In reading this deed their attention was undoubtedly called to the fact that one thousand five hundred and fifty dollars worth of property was sold at a forced sale to satisfy an indebtedness of three hundred and eighty-five dollars and that three hundred acres of land was sold to bring that much—a badge of fraud within itself. This latter deed would also put him on notice that the trust deed did not cover all the land attempted to be conveyed to them. It will be remembered he was buying the property from M. J. Parks, the wife of J. B. Parks; certainly it then became necessary to find deeds from the heirs to this remaining forty at least, and what did he find? Not a sign of a deed from any of the heirs except Mrs. Dora Williamson and her brother, J. J. Whitten, who had no interest in the property. The deeds of course had been signed and delivered to J. B. Parks, by all the heirs except Frank Whitten, who had never signed any deed to either of the Parks, and this fact is admitted by the answer of the appellee's. In the case of *Bass* v. *Nelms,* 56 Miss. 502, was where the complainant after a full knowledge of his rights and after he had instigated a suit, compromised the same and was certainly precluded from further prosecuting the same. I utterly fail to conceive of any similarity of the facts in that case to the one under consideration. The Whitten heirs have never abandoned their suit for a m)ment.

Appellees in another place assert that complainants are estopped by laches and stale claims, for the reason that they never filed this suit until about seven years after they signed the deeds. The complainants showed that they instituted this suit immediately upon the discovery of the facts. .

In the case of *McClusky* v. *Trussel et al.,* 90 Miss. 544, So. 69; a case absolutely analogous to the propc-

sition of the failure to sell in subdivisions, tried in 1906; a case where the purchaser had been in possession eight long years, where there was no element of fraud. On the trial of that case the chancellor, same as this one, denied the relief—on appeal the sale was declared void and the case reversed and remanded, in accordance with that opinion.

It has been said by our own court numerous times that under the law of this state. "There is no such thing as a stale claim properly so called."

*Z. A. Brantley,* for appellee.

The fact in this case that predominates absolutely is the fact that all of these heirs signed with their own hand and acknowledged a deed to Mrs. M. J. Parks, for the balance of a consideration in full of one hundred and thirty-two dollars, as full settlement for their interest in all the lands including the forty acres left out of the trust deed.

Fraud and misrepresentation seems to be the next head that appellant attacks this transaction under. Appellants contend that these parties complainant were entrapped into executing these deeds to the Parkes' not only to the land in the trust deed, but also as to the other forty acres of land. The record shows in this case, in exhibit number two, the original bill filed by G. W. and W. H. Mars, that in this bill the complainant set out the fact that all of these lands described therein, except the southeast quarter of the southeast quarter, section ten, township ten, range thirteen, was included in the trust deed, and that this southeast quarter of the southeast quarter was not in the trust deed at all. These complainants here were defendants in that suit and answered it fully, and this was before they finally executed a deed to their sister Mrs. M. J. Parks to their full interest in all of this land. This answers completely and

thoroughly confutes their statements and the statements made by their brother-in-law and attorney, that they had no knowledge but what this forty acres of land, that is the southeast quarter of the southeast quarter, section ten, township ten, range thirteen, was included in the trust deed.

The complainants contend that there was a fiduciary relation between these parties and that this naturally arises from the fact that they were brothers and sisters, and is a presumption of law, that seems to cling tenaciously in the mind of the attorney for the complainants. His wife, Mrs. May Carmichael, being the party, who after her marriage to Attorney Carmichael received this hundred and fifty-two dollars, admitted by her and receipted for her entire interest in the Whitten Estate, after she had such an eminent advisor as her learned husband to advise her in all of these matters. She signed this receipt and it was all right, and legal, and perfectly satisfactory until after he and she had spent this money, then with empty hands and anxious hearts they cry fraud and misrepresentation and fiduciary relations and every conceivable misrepresentation that could be thought of at that time. The facts show in this case, that not only were the heirs advised and knew all of the happenings in this behalf, knew that this forty acres of land, to-wit the southeast quarter of the southeast quarter, section ten, township ten, range thirteen, was not included in this trust deed, but that it was included in this last deed.

They admit that they did it, but say it was for the sole purpose to make the deed good to Williamson, an innocent purchaser who sought the land from the records which show an absolute and perfect deed in Mrs. M. J. Parks, signed by the heirs in this cause. And all of this fraud and misrepresentation and fiduciary relationship is based upon a letter that Mrs. Parks wrote to Mrs. Carmichael. The said letter was written from Louis-

ville, Mississippi, November 22, 1905, before the suit was filed by Mars, and in this letter Mrs. Parks asked one of the defendants, the wife of the attorney B. B. Carmichael, to explain to her about this matter. This letter says nothing except that they want a perfect deed and that she is willing to pay the heirs not only their share of what the property brought of the fifteen hundred and fifty dollars, but would be willing to pay them the overplus for what she could sell the land for, four hundred and fifty dollars, and that this meant to each one of the heirs one hundred and thirty-two dollars each, and this amount was paid.

The second ground set up in the motion is that Williamson and Gibson are holding the land under a title deed perfect as shown by these records, and are innocent purchasers for a valuable consideration without notice. These men purchased this land after all of these parties had executed a deed to their interest in these lands to Mrs. M. J. Parks, and this land was purchased after Mars' suit and after the deeds had been executed by these parties, and this land could not be subject in any event to the complainant's claim, and that raises the only question whether there would be a legal liability fixed upon Mrs. M. J. Parks and J. B. Parks.

The proof shows that each and all of these heirs received one hundred and thirty-two dollars each, and signed a deed conveying all their interest to the said lands included in the trust deed and the forty acres also.

The record and proof shows in this case that there was no fraud or collusion or misrepresentation whatever, that each and all of the complainants here who at the time were *sui juris,* understood the whole matter thoroughly and knew what interests and rights they had in the said property, and that the agreement between these parties as shown, was accepted by all of them. One of these complainants whose husband was an attorney, who was called upon to give his consent and to advise

his wife in this matter. There could be no fraud in this behalf and none was practiced. No unfair advantage was taken and these complainants are now estopped from denying their deeds as shown in this behalf. Each and all of these complainants had ample time from the beginning of this litigation until its finale to have settled all matters bearing upon their interest, and these diverse litigations were certainly enough to have put them on notice and to have at least done this sufficiently to protect an innocent purchaser. *Hafter* v. *Strange,* 65 Miss. 323, 3 So. 190, 7 American State Reports, 659. This language is there used: "One who claims that a deed signed by him was procured by fraud, and who knows that the grantee is trying to sell the property but remains inactive until after the sale thereof is effected is estopped from maintaining an action against an innocent purchaser to vacate the deed."

These complainants admit that on the reception of this letter that they were advised that Mrs. Parks desired this deed for the purpose of selling this land, and in the brief of counsel they emphasize the fact that on account of the ignorance of the vendee, that it would better assist and aid the vendor, Mrs. J. B. Parks, in selling this land if they would sign this deed, an admission that clearly and unquestionably estops each and every one of these complainants. *Knapp* v. *Bailey,* 1 Am. St. Rep. 295; *Bass* v. *Nelms,* 56 Miss. 502; *Field* v. *Weir,* 28 Miss.—; *Edwards* v. *Roberts,* 7 S. and M. 555; *Hanson* v. *Fields,* 10 Miss. 712.

These complainants are estopped upon their consent and ratification of others in general and their laches in this behalf. They never filed this bill until more than seven years after they had signed these deeds and ratified these acts to these parties. *Vicksburg. R. R. Co.* v. *Ragsdale,* 54 Miss. 200; *Cross* v. *Hendrick,* 7 So. 69, 66 Miss. 61.

"The receipt of the purchase money of land of an estate sold under a void decree of the probate court estops the heirs from contesting the title of the beneficiary. *Willie* v. *Brooks,* 45 Miss. 542.

In the case at bar, these complaints after all this litigation and the questions of titles had been gone over thoroughly, executed to Mrs. M. J. Parks, one of the defendants in this cause, a deed to all their interests in the said lands for a valuable consideration, and they are now estopped from denying their deeds; first, because these complainants assisted in every way they could to sell this land as shown by the letter, quoted, marked exhibit A to the first original bill. *Hafter* v. *Strang,* 7 Am. St. Rep. 659, 65 Miss. 323, 3 So. 190, where this language in used: "A grantor who claims that a deed signed by him was secured by fraud, and who knows that the grantee was trying to sell the property but remains inactive until the sale thereof is effected, is estopped from maintaining an action against an innocent purchaser to vacate the deed."

"The grantor in the absence of the proof of fraud is estopped by the consideration clause in the deed from alleging that it was executed without consideration." 64 Miss. 253, 43 Miss. 260.

"One who takes the benefits of a consideration of a deed in his favor which was made part of a transaction is estopped." 82 Miss. 233, 33 So. 974.

We submit that this cause should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

This case was affirmed on a former day without an opinion. 76 So. 578. A suggestion of error was filed, and we have re-examined the record and have reached the conclusion that we were wrong in affirming the case.

Mrs. M. E. Whitten and J. A. Whitten, in their lifetime owned a body of land in Neshoba county, Miss., and prior to their death executed a deed of trust to C. Rosenbaum upon the lands owned, with the exception of the southeast

quarter of the southeast quarter, section 10, township 10, range 13 east. The complainants and the defendant Mrs. Parks were children of Mr. and Mrs. Whitten; J. B. Parks being the husband of the defendant Maggie Parks. Mrs. Parks acquired the deed of trust from C. Rosenbaum by purchase, and after the death of her father and mother had the lands embraced in the deed of trust sold through a substituted trustee, and J. B. Parks bid in the land at and for the sum of one thousand five hundred and fifty dollars, and thereafter conveyed it to Mrs. Parks, the deed of trust being for three hundred and eighty-five dollars, and about some three years' interest. Subsequent to the sale by the trustee, Mr. and Mrs. Parks, desiring to sell the land, found a purchaser, but this purchaser was not willing to buy the place unless all of the heirs signed the deed. Thereupon Mrs. Parks wrote Mrs. Carmichael and other of the complainants a letter, containing the following:

Louisville, Miss., Nov. 22, 1905.

"Dear May: You will find enclosed a deed for the place Mr. Parks bought the place when sold at one thousand five hundred and fifty dollars, and is going to sell to another man for two thousand dollars but he is a little ignorant and thinks the deed will not be good unless all of you sign it. Saydee, Mollie and I signed but Dora was not dressed when Mr. Rodgers went down and could not but will and then we will have to send to John, Frank and Tate. But here now understand Mr. Parks is going to give you all the benefit of the four hundred fifty dollars over what the place sold for. The deed to him now is perfectly good, only to satisfy this man that he wants you all to sign. You will have to sign before an officer, and it will be about a twenty-five cent or fifty cent cost. But you see by you all doing this he will give four hundred and fifty dollars when if not the place will only be one thousand five hundred and fifty dollars. Now attend to this matter and return by return mail as we want

the others to by the 15th, of December. Now May do not think that you are getting yourself into anything by this for you are not and any way the deed to Mr. Parks is good anyway and if you do not sign you will cut yourselves out of four hundred and fifty dollars. Get Ben to explain if you do not understand. This is just to get the man to be satisfied, while the deed to him is good as it is but he does not understand it. So sign and return," etc.

"Lovingly,                               MAGGIE."

The deed inclosed with this letter in fact contained all of the land of Mr. and Mrs. Whitten, including the southeast quarter of the southeast quarter, section 10, township 10, range 13 east, above mentioned. The testimony in the record shows that the heirs did not know the lands by description, and shows that they were under the impression and understanding that they were conveying the land sold under the deed of trust and not selling the southeast quarter of the southeast quarter, upon which the old family residence was situated. The bill attacked the trustee's sale and attacked the appointment of the substituted trustee and the good faith of the purchasers from Mr. and Mrs. Parks, and the record is somewhat complicated.

We think the letter above set out tended to assure the complainants that the trustee's deed was all right, and that the land embraced in the deed which they signed only embraced lands in the trust deed, and that, under the most favorable view for the appellees, the deed to them was signed without knowledge of the fact that the southeast quarter of the southeast quarter, containing the homestead, was embraced in the deed; and while the deed signed by the heirs to Mrs. Parks would be good as to *bona-fide* purchasers of the land, it would not estop the complainants from asserting their rights to the southeast quarter of the southeast quarter, or from receiving the value of such land.

The chancery court should have granted the relief prayed for as to this land, and to this extent the decree will be reversed, and the cause remanded.

*Reversed and remanded.*